UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| WINSTON DILLION, JR. and TERESA DILLON, | ) ) ) | Civil No. 13-105-ART |
| Plaintiffs, | ) ) | |
| v. | ) ) | **AMENDED AND SUPERSEDING MEMORANDUM OPINION** |
| MEDTRONIC, INC., et al., | ) ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Congress offers two roads into federal court based on federal questions, and the state-court defendants in this case seek to take the one less traveled. Unfortunately that road is closed to them. Although the defendants allege federal law preempts the plaintiffs' claims, preemption is merely a defense, and thus does not count for the purposes of jurisdiction. The Court must therefore remand this case back to state court, since no federal issue appears on the face of the plaintiffs' well-pleaded complaint.

## BACKGROUND

Plaintiffs Winston and Teresa Dillon brought this suit against Medtronic, Inc. and its codefendants (collectively, "Medtronic") in Pike County Circuit Court. *See* R. 1-1. The Dillons assert various state causes of action including negligence, products liability, and several fraud-related claims. *Id.* They seek damages for injuries allegedly caused during Mr. Dillon's spine fusion surgery. According to the Dillons, the doctor used Medtronic's Infuse Bone Graft device in a manner that the Food and Drug Administration (FDA) did not approve for inclusion on the device's label. *Id.* ¶¶ 321–27. And, the Dillons claim

Medtronic is responsible for their injuries because it illegally promoted such "off-label" use of Infuse. *Id.* ¶ 200. Medtronic counters that federal law preempts the Dillons' claims. *See* R. 14 (motion to dismiss). The defendants accordingly removed the case to this Court, invoking its federal-question jurisdiction to hear cases "arising under" federal law. *See* R. 1 ¶ 13 (citing 28 U.S.C. § 1331). The plaintiffs moved to remand. *See* R. 11.

Federal law regulates medical devices pursuant to the Medical Device Amendments (MDA) to the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 360c *et seq. See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316–20 (2008) (describing the rigorous regulatory regime). The MDA provides varying degrees of oversight for medical devices depending on the risks they carry. *Id.* at 316. Class III devices like Infuse are the most heavily regulated. *Id.* at 317; R. 1-1 ¶ 136 (discussing Infuse). In line with the comprehensive federal regime, Congress expressly preempted all state requirements—including common law duties, *see Riegel*, 552 U.S. at 325—relating to medical devices that are "different from, or in addition to," federal standards. 21 U.S.C. § 360k(a)(1). The MDA preemption clause does not, however, bar so-called "parallel" claims for breaches of common-law duties that also violate federal law. *Riegel*, 552 U.S. at 330; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996). Despite occupying much of the medical device field, Congress explicitly chose not to provide a private cause of action to consumers harmed by violations of the FDCA, favoring exclusive government enforcement instead. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (citing 21 U.S.C. § 337(a)). As a result, federal law impliedly preempts state claims based solely on violations of the FDCA. *Id.* at 352–53; *see also Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 586 (6th Cir. 2013) (holding that claims owing their existence to the FDCA regulatory scheme are preempted). Medtronic contends that together,

§ 360k(a) and § 337(a) preempt the Dillons' state law claims based on off-label promotion, and preemption therefore injects the federal question necessary for this case to fall within the Court's subject matter jurisdiction. *See* R. 26 at 9–10.

## DISCUSSION

The defendants may remove this case to federal court if the Dillons could have originally brought it here. *See* 28 U.S.C. § 1441(a). Unlike state trial courts, however, federal district courts do not possess general jurisdiction. As courts of more limited jurisdiction, federal courts instead hold only that power authorized by the Constitution and conferred by statute. *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). As the party seeking removal, Medtronic has the burden of demonstrating that the Court has such jurisdiction. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Kentucky courts are presumptively competent to interpret and faithfully apply federal law. *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc).

## I.     The Law of Federal Question Jurisdiction

The Constitution permits federal courts to hear "Cases . . . arising under" the Constitution and federal law. U.S. Const. art. III, § 2. Early precedent interpreting Article III suggests this phrase may encompass all cases in which a federal question is anywhere an "ingredient." *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823–25 (1824). *But see* Anthony J. Bellia Jr., *Article III and the Cause of Action*, 89 Iowa L. Rev. 777, 801– 03, 808 (2004) (arguing that this language in *Osborn* referred to an essential component of the cause of action). Nevertheless, the Constitution describes only cases that *Congress may permit* federal district courts to hear. District courts have no jurisdiction without congressional authorization since Article III is not self-executing. *See Hertz Corp. v. Friend*,

3

559 U.S. 77, 84 (2010). And Congress generally speaking has the discretion to confer only a subset of what jurisdiction the Constitution allows. *Id.* Largely tracking the language of Article III, Congress has conferred on district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Despite the similar phrasing to the Constitution, the Supreme Court has concluded § 1331 encompasses fewer cases than constitutionally permitted. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807–08 (1986).

## A.      The "Well-Pleaded Complaint" Rule

Most importantly, for statutory purposes a case only "arises under" federal law if a federal issue appears amid the plaintiff's cause of action. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Commonly known as the "well-pleaded complaint rule," this venerable principle marks the outermost boundary of federal question jurisdiction under § 1331. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Applying the well-pleaded complaint rule is thus the first step in assessing jurisdiction. *See* 13D Charles Alan Wright, et al., Federal Practice and Procedure § 3566 (3d ed.) [hereinafter Wright & Miller] ("Analytically, courts should apply the well-pleaded complaint rule first."). Time and again the Supreme Court has affirmed the rule's primacy, most recently in *Vaden v. Discover Bank*. 556 U.S. 49, 60–62 (2009).

The well-pleaded complaint rule carries several important implications. First and foremost, a federal issue must be among only those allegations in the complaint *necessary* for the plaintiff to state a claim. Though a complaint may go far beyond what is needed to plead a cause of action, courts must "look only to the claim itself and ignore any extraneous material." Wright & Miller § 3566. The well-pleaded complaint rule therefore is perhaps

4

more aptly named the "sufficiently pleaded" or "properly pleaded" complaint rule. Problems of terminology aside, the rule's application is clear in most cases. This simplicity makes the well-pleaded complaint rule a "quick rule of thumb" for determining jurisdiction (or at least ruling it out). *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 11 (1983). Beyond offering predictability, the rule also makes the plaintiff "master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). So, while a plaintiff might have a viable federal claim, he is for the most part free to rely instead on state claims in an effort to keep his case out of federal court. *Id.* at 399.

**Responsive Pleadings:** As the well-pleaded complaint rule's name suggests, only the complaint matters. Issues raised in responsive pleadings are irrelevant. *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832 (2002). As a result, federal questions presented by defenses—or even by the plaintiff's *anticipatory rebuttal* of an expected defense—cannot support jurisdiction. *See Franchise Tax Bd.*, 463 U.S. at 10. Call it formalistic, but since the goal is simplicity that's sort of the point. Regardless, the no-defense rule serves a functional purpose as well: it prevents a federal district court from unnecessarily asserting jurisdiction based on an issue the defendant might never raise or which the court need not address due to the plaintiff's failure to plead a cognizable claim under state law. *See Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 576 (6th Cir. 2002). So, with only rare exception, a dispute over whether federal law trumps the plaintiff's state cause of action does not satisfy § 1331, since preemption is usually raised as a defense. *See Caterpillar*, 482 U.S. at 393. More on the exceptions later.

**B.**     **The Two Roads to Federal Court**

Consistent with the well-pleaded complaint rule, § 1331 offers two roads to federal court.  One is relatively clear, the other, not so much.

**Federal Causes of Action:**  The first and most common road to federal court is through a federal claim.  As Justice Holmes famously quipped, "[a] suit arises under the law that creates the cause of action."  *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).  Thus, if federal law provides the right to sue, the case may proceed in federal court.  Much to Justice Holmes's frustration, however, the Supreme Court did not see a federal cause of action as the exclusive avenue for establishing jurisdiction.  *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 213–15 (1921) (Holmes, J., dissenting).  Despite the elegant simplicity of Holmes's test, the Supreme Court preferred shaping jurisdiction under § 1331 case by case so as to accommodate, as Justice Cardozo put it, the "kaleidoscopic situations" presenting federal questions.  *Gully v. First Nat. Bank*, 299 U.S. 109, 117 (1936).  Holmes's formula therefore offers merely one possible road to the federal courthouse, not the *only* road.  *See Franchise Tax Bd.*, 463 U.S. at 9.

**State Claims Raising Significant Federal Issues:**  Following its ad hoc approach, the Supreme Court over time paved a second road to federal court: through state causes of action containing "significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se based on the violation of a federal duty.  *See Merrell Dow*, 478 U.S. at 814 (discussing "the presence of the federal issue as an element of the state tort").  The second jurisdictional road eventually came to look less like a road, however, and more like a maze.

*See Gunn*, 133 S. Ct. at 1065 (comparing the case law to the work of abstract expressionist drip painter Jackson Pollock). Sensing the mounting confusion, the Supreme Court has recently attempted to clarify the area, distilling the second road into four factors. A state claim will only trigger federal question jurisdiction if the federal issue is: 1) necessarily raised, 2) actually disputed, 3) substantial, and 4) capable of resolution in federal court without upsetting the traditional balance of state and federal judicial power. *See id.* (citing *Grable*, 545 U.S. at 313–14).

Though *Grable* and *Gunn* did much to dispel doctrinal confusion, the last two factors are still rather imprecise. So, while history suggests Holmes may have been wrong as a matter of § 1331's original meaning, *see generally* Ann Woolhandler & Michael G. Collins, *Federal Question Jurisdiction and Justice Holmes*, 84 Notre Dame L. Rev. 2151 (2009), his comparatively clear rule has much going for it, *see Grable*, 545 U.S. at 321 (Thomas, J., concurring) (suggesting that the Supreme Court consider returning to the Holmes test out of the need for jurisdictional clarity); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 739–40 (7th Cir. 2004) (Posner, J.) (noting the general advantages of standards but explaining that clear jurisdictional rules are preferable because they avoid wasteful litigation over forum). Whatever its merits, however, the Holmes test is not the law.

**The Second Road and the Well-Pleaded Complaint Rule:** Despite the remaining uncertainty surrounding *Grable*, one beacon of relative clarity remains: the well-pleaded complaint rule. Even if they are substantial, federal questions triggering jurisdiction must still appear amid the elements of the plaintiff's cause of action. *See* Wright & Miller § 3566 ("Only if the federal matter is presented in [a well-pleaded complaint] should it then be

necessary to assess the substantiality and centrality of the federal issues."). *Grable* did nothing to change that.[1] *See Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) [hereinafter *CALSTAR*]. Lest there remain any doubt on that point, as already noted, the Supreme Court after *Grable* reaffirmed the well-pleaded complaint rule's vitality in *Vaden*, rejecting federal jurisdiction over state counterclaims "even if they rely exclusively on federal substantive law." 556 U.S. at 62; *see also id.* at 60–61 (emphasizing that only a *complaint* can establish federal question jurisdiction and thus such jurisdiction "cannot be predicated on an actual or anticipated defense"). And even if there was some doubt (there is not) about whether *Grable* abrogated the well-pleaded complaint rule, it is up to the Supreme Court to overrule explicitly its prior precedents repeatedly holding that federal issues in defenses (and preemption specifically) do not count under § 1331. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). *Grable* and *Gunn* thus stand for the proposition that a state-based claim will support jurisdiction under § 1331 only if it satisfies *both* the well-pleaded complaint rule *and* raises significant federal issues. *See CALSTAR*, 636 F.3d at 542.

## C. Exceptions to the Well-Pleaded Complaint Rule

Most rules have exceptions, of course, and the well-pleaded complaint rule is no different. It has two: complete preemption and artful pleading. In certain circumstances, both of these doctrines allow federal courts to recast ostensibly state causes of action as federal causes of action. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475–76

---

[1] The Sixth Circuit has referred to the substantial-federal-question doctrine as an "exception" to the well-pleaded complaint rule. *See Mikulski*, 501 F.3d at 560. For the reasons discussed in Appendix A, also available at *Dillon v. Medtronic, Inc.*, No. 13-105-ART, 2014 WL 28828 (E.D. Ky. Jan. 2, 2014), this choice of terminology does not change the reasoning or the outcome in this case because the substantial-federal-question doctrine is not a true exception to the well-pleaded-complaint rule.

(1998); *Caterpillar*, 482 U.S. at 393. Where these exceptions apply, the judge usurps the plaintiff as master of the complaint. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 14 (2003) (Scalia, J., dissenting) (questioning the authority of a judge to effectively recast the plaintiff's cause of action as "jurisdictional alchemy"). A number of justices, however, prefer to call these doctrines corollaries to the well-pleaded complaint rule rather than exceptions. *See Franchise Tax Bd.*, 463 U.S. at 22. In their view, the doctrines are consistent with the rule because both are aimed at discovering whether the plaintiff's cause of action *really* relies on state or federal law. Whatever you call them, these doctrines allow federal judges to become the master of the complaint in two limited circumstances. *See Anderson*, 539 U.S. at 15 (Scalia, J., dissenting).

**Complete Preemption:** The first exception is so-called "complete preemption," a confusingly named doctrine that "'only a judge could love.'" *Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012) (quoting *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1075 (7th Cir. 1992)). Courts should not reflexively equate complete preemption, a jurisdictional rule, with the substantive law of preemption. Despite their connection, they are distinct. That federal law ultimately preempts a plaintiff's state claims does not by itself establish jurisdiction. *See Caterpillar*, 482 U.S. at 398. Rather, preemption serves as a basis for federal question jurisdiction only when Congress so occupies the relevant field that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. The Supreme Court has only found such complete preemption in three statutes: the Labor Management Relations Act, ERISA, and the National Bank Act. *See Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 531 (6th Cir. 2010) (citing cases). And the Sixth Circuit has only expanded the doctrine

twice. *See Ritchie v. Williams*, 395 F.3d 283, 286–87 (6th Cir. 2005) (Copyright Act); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949–50 (6th Cir. 2002) (National Flood Insurance Act).

Essential to complete preemption is an alternative federal cause of action the plaintiff could have invoked. *Anderson*, 539 U.S. at 9–10 (holding that preemption supports jurisdiction only if federal law "provide[s] the exclusive cause of action"); *see also Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996). This rule makes intuitive sense. Without a federal cause of action, there would simply be nothing into which to convert the plaintiff's state-law claims. A plaintiff otherwise "would be forced into federal court with no relief available." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002). Recharacterizing state claims to prevent artful pleading around an exclusive federal cause of action is one thing (discussed further below), but knowingly repleading the plaintiff right out of court would make a mockery of the well-pleaded complaint rule. So, while complete preemption displaces the plaintiff as master of his complaint, recasting state claims as federal ones satisfies the traditional rule that "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 133 S. Ct. at 1064 (citing *Am. Well Works*, 241 U.S. at 260). Like the defense of federal claim preclusion, however, preemption alone "does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether." *Rivet*, 522 U.S. at 476. Absent a federal remedy, preemption remains merely a defense and thus cannot satisfy the well-pleaded complaint rule.

**Artful Pleading:** Lastly, a plaintiff's state-law claims might support federal question jurisdiction if they are artfully pled to avoid federal issues but in reality depend on federal law. *Id.* at 475; *see also Franchise Tax Bd.*, 463 U.S. at 22. What, if any, independent work

this doctrine does, however, remains a mystery. The Supreme Court in *Rivet* explained that complete preemption is an application of artful pleading doctrine. 522 U.S. at 475. The doctrine might also encompass "situations in which federal issues are embedded within state law causes of action," but even if that is correct, *Grable*'s four-part test still limits which of these situations confer jurisdiction. Wright & Miller § 3722.1. Moreover, like complete preemption, jurisdiction based on a strategically pled complaint is only possible when the plaintiff's claims "actually implicate a federal cause of action" that might have been invoked absent artful pleading. *Mikulski*, 501 F.3d at 561–63. Otherwise, without an alternative federal cause of action there would be nothing to plead around. There is no artifice in failing to plead a claim that does not even exist. Artful pleading doctrine thus appears to have nothing to add beyond serving as an umbrella term or underlying theory for other rules.

## II.     Applying the Law to the Dillons' Claims

In summary, a suit "arises under" federal law only if the complaint: 1) states a federal cause of action, 2) pleads state claims depending on a substantial and disputed federal issue, 3) raises state claims so completely preempted they are really federal, or 4) artfully pleads state claims that are at bottom federal claims in disguise. *See Brunner*, 629 F.3d at 530 (citing *Mikulski*, 501 F.3d at 560). This case features none of these grounds for removal. The Court must therefore remand it back to state court. *See* 28 U.S.C. § 1447(c).

**Federal Cause of Action:** The Dillons' complaint states no federal cause of action, the traditional door into federal court, *see Am. Well Works*, 241 U.S. at 260. Indeed, the Dillons disclaim reliance on any federal remedy: "All claims contained in this complaint are based on state law. . . . Plaintiff herein is alleging no right to relief under federal law." R. 1-1 ¶ 79; *see also id.* ¶ 219 ("Plaintiff makes no claim for recovery as a cause of action under

[the] FDCA statutes and accompanying regulation."). Since the plaintiffs are masters of their complaint, including what law they choose to invoke, *see Brunner*, 629 F.3d at 531, the Dillons' complaint does not provide a basis for arising-under jurisdiction.

**Substantial Federal Question:** Nor do any of the Dillons' claims depend on embedded issues of federal law. Medtronic vigorously argues that *Grable*'s four-factor analysis applies here because whether the Dillons ultimately may recover for their injuries turns on the scope of preemption, a federal question. *See* R. 26 at 8–11. But this argument ignores the well-pleaded complaint rule. And contrary to Medtronic's suggestion, *see* R. 26 at 7, *Grable* did nothing to disturb that rule as the outermost limit of federal question jurisdiction. This explains why courts analyze complete preemption separately from substantiality post-*Grable*. *See Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712–13 (6th Cir. 2012); *Brunner*, 629 F.3d at 531.

As a result, even if a federal question in this case is substantial, it must appear on the face of the Dillons' well-pleaded complaint. Put differently, a federal issue must be among the allegations necessary for the Dillons initially to plead their state causes of action. Other federal issues governing whether their claims ultimately entitle them to relief are irrelevant. Since federal preemption is a defense, it forms no part of the Dillons' causes of action and thus does not satisfy the well-pleaded complaint rule. For this reason the defendants' claims of preemption cannot provide the substantial federal question needed for removal. *See Taylor*, 481 U.S. at 63; *Caterpillar*, 482 U.S. at 393. And to the extent the Dillons use their complaint to rebut anticipated arguments regarding federal preemption, that rebuttal is equally unnecessary to plead state claims and similarly irrelevant for purposes of the well-pleaded complaint rule. *See Mottley*, 211 U.S. at 152.

To be sure, in order to avoid preemption the Dillons must base their state claims on conduct that also violates federal law, *see Riegel*, 552 U.S. at 330, but that does not make federal law part of their sufficiently pled state causes of action. With only one minor exception, the Dillons generally do not allege that Medtronic breached state duties by violating federal standards, as with a claim of negligence *per se*. The Dillons' claims thus are not "*premised* on violation of federal law, but rather on an independent state duty. The alleged breach arises from the same act, but the legal basis is different." *Fulgenzi*, 711 F.3d at 587. And the allegations of off-label use do not lead to a different conclusion. While Infuse's FDA-mandated label is of course a creature of federal law, its "federalness" is superfluous to the Dillons' state claims. Leave the label but take away the federal requirement and the Dillons' claims for products liability, misrepresentation, and negligence remain substantively unchanged. Since federal labeling requirements are unnecessary to the Dillons' causes of action, they do not satisfy the well-pleaded complaint rule. And besides, even if off-label use was essential to those claims, it would still fail as a basis for jurisdiction because none of the parties dispute the off-label nature of the procedures at issue. *Cf. Grable*, 545 U.S. at 314 (covering only disputed federal questions).

The Dillons do allege, however, that Medtronic "[f]ail[ed] to exercise reasonable care by not complying with federal law and regulations applicable to the sale and marketing of Infuse®." *See* R. 1-1 ¶ 381(c). This is indeed an allegation of negligence *per se*. But this is only one of several independent theories supporting their broader negligence claim, the rest of which do not depend on federal law. *Id.* The Dillons' cause of action for negligence thus does not satisfy the well-pleaded complaint rule, since claims supported by alternative non-

federal theories may not provide the basis for federal question jurisdiction. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809–10 (1988).

**Complete Preemption:** Despite the normal rule that preemption is a defense unable to support federal jurisdiction, it might support jurisdiction in this case if federal law so completely occupies the field of medical device regulation that any state claim in the area is really from the outset a federal claim. *Caterpillar*, 482 U.S. at 393. Without a federal cause of action, however, there can be no complete preemption in the sense relevant to jurisdiction. *See Anderson*, 539 U.S. at 9–10; *Strong*, 78 F.3d at 260. The Court thus may recast the Dillons state claims as federal ones only if Congress created "a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." *Strong*, 78 F.3d at 260. As a result, absent a federal remedy the Dillons could have invoked, the defendants' claims of preemption remain only a defense that does not satisfy the well-pleaded complaint rule.

The essential federal cause of action is missing from the MDA. To the Court's knowledge, only one appellate court has addressed whether the MDA so completely preempts state law as to support federal jurisdiction. Unfortunately for Medtronic, that court is the Sixth Circuit in *Strong*, which rejected complete preemption. 78 F.3d at 259–61. As the court in *Strong* reasoned, there is no complete preemption here because the FDCA specifically disclaims a private cause of action. *See* 21 U.S.C. § 337(a) (providing that all actions to enforce the Act "shall be by and in the name of the United States"). Whatever federal administrative remedies might be available does not change that result. *Strong*, 78 F.3d at 261.

**Artful Pleading:** Finally, the Dillons' state-law claims might support federal question jurisdiction if they are really federal claims in disguise. *See Brunner*, 629 F.3d at 531. There is no such artful pleading in this case, however, for the same reason there is no complete preemption. Jurisdiction based on a strategically pled complaint is only possible when the plaintiff's claims "actually implicate a federal cause of action" that might have been invoked absent artful pleading. *Mikulski*, 501 F.3d at 561. But as already discussed, there is no private cause of action under the MDA. *See* 21 U.S.C. § 337. Since there is simply no federal claim for the Dillons to avoid, artful pleading doctrine is no basis for the Court's jurisdiction.

## CONCLUSION

For the reasons discussed, the Court lacks subject-matter jurisdiction over this case. It is accordingly **ORDERED** that the Dillons' motion to remand, R. 11, is **GRANTED**. This case is **REMANDED** to the Pike County Circuit Court. All pending motions are **DENIED AS MOOT**, and this case shall be **STRICKEN** from the Court's active docket.

This the 6th day of January, 2014.

Signed By:

*Amul R. Thapar* AT

United States District Judge

# APPENDIX A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

WINSTON DILLON, JR. and ) 
TERESA DILLON, )
 ) Civil No. 13-105-ART
     Plaintiffs, )
 )
v. ) **MEMORANDUM OPINION**
 ) **AND ORDER**
MEDTRONIC, INC., et al., )
 )
     Defendants. )

*** *** *** ***

On December 20, 2013, the Court remanded this case to Pike County Circuit Court for lack of subject-matter jurisdiction. R. 31. The defendants now move the Court to reconsider its ruling on account of clear legal error. R. 32. The Court is powerless to entertain this motion because, once a case has been remanded to state court for lack of jurisdiction, 28 U.S.C. § 1447(d) divests the Court of authority to reconsider the remand order. *See Gibson v. Am. Mining Ins. Co.*, No. 08-118-ART, 2008 WL 4858396, at *1 (E.D. Ky. Nov. 7, 2008). Regardless, even if the Court had authority to reconsider its remand order, it would not reach a different conclusion.

## DISCUSSION

The defendants specifically argue that the Court misread Sixth Circuit precedent on substantial-federal-question doctrine. R. 32-1 at 4–5 (relying on *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007) (en banc)). They contend that the Sixth Circuit permits jurisdiction based on substantial federal questions whether or not such questions appear on the face of the plaintiff's complaint. *Id.* at 4. That conclusion is wrong.

Nevertheless, the defendants are indeed correct that the Sixth Circuit and other courts have confusingly referred to the substantial-federal-question doctrine as a third "exception" to the well-pleaded complaint rule (in addition to complete preemption and artful pleading). *See Mikulski*, 501 F.3d at 560; *see also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203–04 (10th Cir. 2012); *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 141 (2d Cir. 2012). But this choice of words does not undermine the reasoning behind the remand in this case. On the contrary, the only difference between the Court's opinion and *Mikulski* is that of terminology. There is no difference in substance.

## I.  The Traditional Understanding of the Well-Pleaded Complaint Rule

What this Court refers to as the "well-pleaded complaint rule" is the longstanding principle that, to support federal jurisdiction, a federal issue must appear amid the essential elements of the plaintiff's cause of action. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The primary consequence of this rule is that issues raised in responsive pleadings are irrelevant. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832 (2002). Federal questions presented by defenses like preemption thus cannot support jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). As a result, complete preemption is a true exception to the well-pleaded complaint rule, since it permits jurisdiction on the basis of a federal defense (by recasting the plaintiff's state claims as federal claims).

The substantial-federal-question doctrine, on the other hand, is not a true exception to the rule, because it does not permit jurisdiction based on federal issues raised outside the complaint. Although the doctrine permits federal jurisdiction based on state claims, the plaintiff's cause of action need not be federal to satisfy the well-pleaded complaint rule so

2

long as one of the claim's elements depends on federal law. For example, take a state law tort claim for negligence per se based solely on violation of a federal duty. A question regarding that federal duty appears on the face of the plaintiff's complaint amid the elements of his cause of action. The question might be substantial, and thus the claim may "arise under" federal law, but federal jurisdiction over such a claim is entirely consistent with the traditional view of the well-pleaded complaint rule. *See, e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201–02 (1921) (finding jurisdiction over a state claim to enjoin a trust from investing in allegedly unconstitutional federal bonds).

*Mikulski*'s understanding of substantial-federal-question doctrine is not to the contrary. As the Sixth Circuit explains, state claims do not "arise under" federal law for purposes of 28 U.S.C. § 1331 "unless it appears that some substantial, disputed question of federal law is a *necessary element of one of the well-pleaded state claims*." *Mikulski*, 501 F.3d at 565 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)) (emphasis added). The federal issue, in other words, must appear on the face of the complaint. That principle is behind this Court's holding that the substantial-federal-question doctrine does not permit jurisdiction based on issues raised in defenses. And that holding also accords with the Sixth Circuit's *own reading* of *Mikulski*. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474–76 (6th Cir. 2008) (applying *Mikulski* and holding that issues raised in defenses do not satisfy the first prong of the substantial-federal-question test because they are not an "essential element" of the plaintiff's claim). And no other circuit disagrees. *See Devon*, 693 F.3d at 1208–09 (rejecting application of substantial-federal-question doctrine to defenses); *Shinnecock Indian Nation*, 686 F.3d at 140 n.4 (reaching the same conclusion because issues raised in defenses are "not necessarily raised by the

[plaintiffs'] affirmative claims").

## II. The Well-Pleaded Complaint Rule as the Holmes Test

But if *Mikluski*'s understanding of the substantial-federal-question doctrine is consistent with the traditional view of the well-pleaded complaint rule, why call the doctrine an "exception" to the rule? To be sure, the opinion's recitation of the rule is consistent with the traditional formulation: "To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." *Mikulski*, 501 F.3d at 560 (quotation marks and brackets omitted). But the traditional view of the rule cannot explain why the Sixth Circuit considers the substantial-federal-question doctrine an "exception" despite *expressly* limiting the doctrine to federal issues found on the face of the plaintiff's complaint. If *Mikulski* had not been so clear on that limit, then perhaps it could be read as treating the substantial-federal-question doctrine as a true exception to the well-pleaded complaint rule. Since the opinion was clear on that score, however, the only possible explanation is that the Sixth Circuit did not use the "well-pleaded complaint rule" in the traditional sense.

There is only one usage of that term that accounts for the entire opinion: *Mikulski* conflates the "well-pleaded complaint rule" with the Holmes creation test, the general rule that "[a] suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *see also Dillon v. Medtronic, Inc.*, No. 13-105-ART, 2013 WL 6834812, at *3–4 (E.D. Ky. Dec. 20, 2013) (discussing the Holmes test). Substitute in the Holmes test and the opinion's terminology makes much more sense. Even limited to issues appearing amid the plaintiff's cause of action, the substantial-federal-question doctrine is an exception to that test because it permits federal jurisdiction

over state claims.  *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Thus, considering the *Mikulski* opinion as a coherent whole, the Holmes test is the most plausible reading of the Sixth Circuit's usage of the "well-pleaded complaint rule."

And while imprecise, using the well-pleaded complaint rule as a substitute for the Holmes test has some ready explanations.  Since the Holmes test "accounts for the vast bulk of suits that arise under federal law," *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013), it is easy to confuse that test with the well-pleaded complaint rule, the "basic principle marking the boundaries of the federal question jurisdiction."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  Moreover, because practically speaking "a plaintiff can generally guarantee an action will be heard in state court" by avoiding federal claims, *Devon*, 693 F.3d at 1202 (quotation marks and alteration omitted), it is natural to associate this usually conclusive power over the forum with the plaintiff's role—arising from the well-pleaded complaint rule—as "master of the complaint," *Caterpillar*, 482 U.S. at 398–99.  That association, of course, is an oversimplification.  The substantial-federal-question doctrine illustrates that, as master of the complaint, the plaintiff can guarantee a state forum only by avoiding federal law *entirely*; simply avoiding federal claims is not enough to guard against removal. Nevertheless, because the plaintiff's power to choose the forum generally overlaps with the Holmes test, blurring that test with the well-pleaded complaint rule is understandable.  This method of association appears particularly likely in *Mikulski*, since the opinion emphasizes that all three "exceptions" to the well-pleaded complaint rule "force a plaintiff into federal court despite the plaintiff's desire to proceed in state court."  501 F.3d at 560.

## III.     Support from Supreme Court Precedent

Finally, whatever best explains the opinion in *Mikulski*, this Court's holding is directly in line with *Grable* and subsequent Supreme Court precedent discussing the well-pleaded complaint rule.  As the Supreme Court formulated the substantial-federal-question test in *Grable*, the initial question is whether "a state-law claim necessarily raise[s] a stated federal issue."  545 U.S. at 314.  The plaintiff's claim itself therefore must state the federal issue, consistent with the traditional view of the well-pleaded complaint rule.  Put simply, the first prong of *Grable*'s test *is* the well-pleaded complaint rule.  And that rule was satisfied in *Grable* because there a federal question was necessary to make out the plaintiff's state quiet title claim.  *Id.* at 314–15.  The Dillons' claims, in contrast, fail the first prong of *Grable*'s four-part test because no federal issue is necessary to state their claims.

And Supreme Court precedent postdating both *Grable* and *Mikulski* confirms this reasoning is sound.  As the High Court described the well-pleaded complaint rule in *Vaden v. Discover Bank*, "a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  556 U.S. 49, 60 (2009) (quotation marks and alteration omitted).  The *Vaden* Court reaffirmed that federal issues appearing in responsive pleadings, including defenses and even compulsory counterclaims, are irrelevant to subject-matter jurisdiction.  *Id.* at 60–62.  This bolsters the Court's narrow reading of the Sixth Circuit's opinion in *Mikulski*.  And even if that reading is wrong (it is not), *Vaden* overrules a more capacious interpretation of *Grable*, removing any lingering doubt.  So, whatever the Sixth Circuit calls the substantial-federal-question doctrine ("exception" to the well-pleaded complaint rule or not), this Court's prior opinion is fully consistent with binding precedent.

**CONCLUSION**

For the reasons discussed, it is accordingly **ORDERED** that the defendants' motion to reconsider, R. 32, is **DENIED**.

This the 2nd day of January, 2014.

Signed By:

*Amul R. Thapar*    AT

United States District Judge